In the Matter of the Application of THE CITY OF NEW YORK Relative to Acquiring Title to the Real Property Required for the Widenings of Southern Boulevard from East 138th Street to Whitlock Avenue; Whitlock Avenue from Southern Boulevard to Leggett Avenue and from Hunts Point Avenue to Eastern Boulevard, and Eastern Boulevard from Whitlock Avenue to Middletown Road, Excepting Those Portions of Eastern Boulevard That Are Laid Out across Bronx River and Westchester Creek; Where the Title to Be Acquired Shall Be an Easement Which Will Enable the City of New York to Construct Bridges Carrying Eastern Boulevard over These Waterways, in the Borough of The Bronx, City of New York.

HENRY W. MUMM, Claimant, Appellant; THE CITY OF NEW YORK, Petitioner, Respondent.

First Department, November 29, 1940.

*Harry H. Chambers* of counsel [*Harry B. Chambers* with him on the brief; *Chambers & Chambers*, attorneys], for the appellant.

*Joseph F. Mulqueen, Jr.,* of counsel [*Julius Isaacs* with him on the brief; *William C. Chanler, Corporation Counsel*], for the respondent.

UNTERMYER, J.   The claimant was the owner of property situated at the corner of Eastern boulevard and Layton avenue in the Bronx, improved with a two-story and basement brick building.   In connection with the widening of Eastern boulevard and other streets it became necessary that the city of New York acquire so large a part of the claimant's property that the building thereon was rendered worthless.   By its tentative decree in the condemnation proceeding filed on February 15, 1940, the court, on conflicting evidence of value, allowed the sum of $22,500 for the improvements of the claimant's property.

At the time of vesting of title in the city on June 27, 1938, the building was approximately one and one-half feet above the grade of Layton avenue.   The real estate experts who testified for the city had examined the premises on many occasions and, in connection with their testimony, there was received in evidence a photograph of the premises which unmistakably disclosed that the building was considerably above the grade of Layton avenue. It should also be observed that the contention was never made by the claimant that the building was constructed at grade and that questions propounded by the assistant corporation counsel to one of the claimant's witnesses together with the answers of the witness tended to indicate that the city was aware, as from the photograph in evidence it must have been aware, that the building was not constructed at the grade of Layton avenue.

In March, 1940, the city moved, by order to show cause, for a reargument of its objections to the tentative award.   The occasion for that motion was the fact that it had been ascertained that in 1932 the claimant was awarded $5,000 for damages to the improvement caused by the lowering of the grade of Layton avenue and that he had not constructed the building to conform to the established grade.   It was further alleged that " evidently " no deduction for any diminution in value had been made on that account.   The motion for reargument of the city's objections having been granted over the claimant's opposition, the city proceeded to recall, among other witnesses, two real estate experts, and the claimant recalled one real estate expert, who had testified in the earlier proceedings.   The city's two experts, however, did not testify unequivocally that at the time they had given their previous appraisals they had failed to perceive that the claimant's building was above the grade of Layton avenue as it then existed, but only that they were not aware of any " change of grade " and that if they had " been aware of the change of the established grade in Layton Avenue " their appraisal of the building would have been lower by $5,000.   These witnesses testified further that before

making their previous appraisals they had examined the property, in one case twenty-four times, in the other twenty times, and that they had intended to appraise the improvements as they existed at the time of their examination of the premises. The claimant's witness testified to the fact, which is evident from the photograph in evidence, that " the instant you examine the building you would know that there was a change there, because the building itself was at least a foot and a half above the physical grade of Layton Avenue." He further testified that his appraisal in the earlier proceedings would have been at least $5,000 greater if the building had been at grade at that time.

The court, nevertheless, in its final decree reduced the tentative award by the sum of $5,000.

We find no warrant for this reduction. The claimant was under no duty to expend the award of $5,000 received by him in the change of grade proceeding in the reconstruction of his building but might, if he desired, retain that sum and allow the building to remain above grade. It seems incredible to us that when the improvement was examined by the city's real estate experts on such numerous occasions and, as they testified, was " studied " and " measured " by them, they should have failed to observe that it was one and one-half feet above the grade of Layton avenue. It is equally incredible that they should not have perceived that fact from the photograph of the premises received in evidence. Both these witnesses were constrained to admit that their testimony in the earlier proceeding was intended to express the value of the building as it existed at the time of their examination. A witness desiring to retract testimony previously given may properly be required to do so without equivocation. If it was the purpose of the city's experts to testify that at the time they made their earlier appraisals they were not aware that the building which they had examined on so many occasions was above the grade of Layton avenue, they should have testified to that fact in language free from ambiguity. Upon the present record the only reasonable interpretation which may be given to their evidence is that they entertained the opinion that they would have been justified in reducing their appraisal of the building by $5,000 if they had known of the previous award of that sum to the claimant on account of the change of grade. That, of course, would not be so. No double compensation would result from payment to the claimant of the damage sustained in 1932 on account of the change of grade and an award of the fair value of the building in the condition in which it existed at the time of the vesting of title in the city in 1938,

The final decree, so far as appealed from, should be modified by increasing the award to the sum of $29,541.99 with interest, and, as so modified, affirmed, with costs to the claimant-appellant.

GLENNON and CALLAHAN, JJ., concur; MARTIN, P. J., and DORE, J., dissent and vote to affirm.

DORE, J. (dissenting). We think the reduction of the tentative award made by the Special Term in its final decree was proper. Of course the claimant was under no duty to spend the $5,000 award received in the prior change of grade proceeding and might, as he did, retain that sum and allow the building to remain as it originally was, above grade. But that $5,000 was awarded because the property was damaged to that extent.

In the prior proceeding, claimant's experts testified that by reason of the damage imposed by the change of grade, it would be necessary to lower the building approximately two feet to bring it to the new grade as established, and that other reconstruction work would be necessary to make the building rentable and salable. On the basis of that proof, $5,000 was awarded for such damages. The ruling of the Special Term, now appealed from, merely holds that the claimant, who received that sum for such damages, cannot, when the entire building is later condemned, collect the full market value of it as an undamaged building on appraisals that make no deduction for the damages caused by the change of grade.

At the hearing of the city's objections to the tentative award, the testimony of both city experts clearly shows they had not originally appraised the property as property in a damaged condition still above grade. Their failure to draw the proper conclusions either from the photograph or the view of the building was not an irrevocable bar to the correction of the mistake. If the experts erred on a mistaken assumption that the building was on grade, the court was not obliged to perpetuate that error but could correct it before the entry of a final decree.

Appellant's contention amounts to the claim that having received an award of $5,000 as damages in order to restore the building to the new grade, and not having expended it, so that the building still remains in the damaged condition for which that award was given, he may, nevertheless, in a later condemnation proceeding procure an award based on the value of the building without any diminution for its damaged condition. On the condemnation proceeding it was still an off-grade building. Special Term properly held that appellant should not be compensated for it as though it were an on-grade building.

The final decree appealed from should in all respects be affirmed, with costs.

MARTIN, P. J., concurs.

Final decree, so far as appealed from, modified by increasing the award to the sum of $29,541.99 with interest, and, as so modified, affirmed, with costs to the claimant-appellant. Settle order on notice.